UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JUDITH A. MACDONALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:10-CV-68 JD |
| ) | |
| LIFE, INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

**<u>Memorandum Opinion and Order</u>**

LIFE, Incorporated fired Judith MacDonald in November 2008, citing a serious nursing error. MacDonald filed this suit on January 22, 2010, in Allen Superior Court, alleging that the real reason that LIFE fired her was because of her age, a previous claim for workman's compensation, or both. LIFE now moves the Court to enter summary judgment in its favor on all claims. LIFE filed its motion on June 17, 2011 [DE 25]. After MacDonald's attorney withdrew his representation, MacDonald asked the Court to consider appointing counsel on her behalf [DE 30]. After the Court declined [DE 31], MacDonald responded to LIFE's motion for summary judgment on January 10, 2012 [DE 34]. LIFE replied on January 31, 2012 [DE 37]. That same day, LIFE also filed a motion to strike certain documents that Plaintiff attached to her response [DE 38], and MacDonald responded on February 21, 2012 [DE 41]. Both motions are ripe for adjudication. Because MacDonald has failed to offer any evidence that she was replaced by a substantially younger individual, the Court GRANTS the motion for summary judgment in part. Rather than consider the remaining state law claim, however, the Court declines to exercise supplemental jurisdiction and REMANDS the case to the Allen Superior Court.

**Motion to Strike**

LIFE moves to strike most of the documentation that MacDonald submitted in opposition to its motion for summary judgment, contending that it is improper, irrelevant, and immaterial to the claims in this matter. *See* DE 38 ¶ 4. LIFE is undoubtedly correct in most, if not all, respects. But as LIFE is well aware, MacDonald is proceeding without the benefit of a lawyer at this point and has no legal training herself. She has submitted a substantial response in opposition to LIFE's motion for summary judgment rather than merely rely on conclusory allegations in her complaint. The Court is not unsympathetic to MacDonald's situation and has no wish to resolve this dispute on the basis of procedural technicalities. Therefore, in light of MacDonald's *pro se* status, if the Court found relevant, material evidence in her documentation, it would be inclined to provide MacDonald with another opportunity to submit her evidence in an admissible form. *See* Fed. R. Civ. P. 56(e).

The Court need not, however, resolve the motion definitively or allow MacDonald to resubmit her evidence in another form because it would not affect the result. MacDonald's age discrimination claim fails not because of technicalities but because there is no evidence that LIFE fired her because of her age. Thus, even if the Court considered all the documentation that MacDonald submitted, she would still not prevail on her federal age discrimination claim because none of the documentation could establish this missing element to her case. And because the Court is remanding the remaining state law claim to state court, it is more appropriate to allow that court to determine under Indiana law what evidence is admissible at the summary judgment stage and in what form. However, because certain parts of MacDonald's response may contain individually identifiable health information protected under federal and state laws, the Court will order the clerk to redact any such information from DE 34 before the record is transmitted on remand.

**Background**

LIFE operates Medicaid Waiver Provider homes, providing services to medically fragile physically and mentally handicapped persons in the Fort Wayne Area. *See* DE 26-3 at 1–3; DE 26-4 ¶ 3. MacDonald is a Licensed Practical Nurse who has worked for LIFE since the business began in March 2003. *See* DE 26-3 at 1. The company is owned by Kathy Boeslund, Susan Hutchinson, Patricia Hostler, and Marci (Poling) Reinbolt. *See* DE 26-4 ¶ 4. Three of the four were over 40 years old when they hired MacDonald. *See* DE 26-3 at 16–17.

MacDonald was born July 21, 1946. *See* DE 1 ¶ 7. She was 56 years old when she was hired in March 2003 and 62 years old when she was fired in November 2008. During her time with LIFE, she managed the medical department and supervised other nurses. *See* DE 26-3 at 12–19. She conducted medical assessments for patients, administered flu shots, attended doctors appointments with patients, and prepared care plans for each patient. *See id.* at 5–6. As head of the medical department, she also taught classes on medication administration to new employees. *See id.* at 9–10.

In March or April 2007, MacDonald contracted MRSA (an antibiotic resistant form of staph) and spent two weeks in the hospital. *See id.* at 32–35. Believing that she contracted it while training a new staff member at one of LIFE's waiver homes, MacDonald told Patricia Hostler that she wanted to file a workman's compensation claim. *See id.* at 32–34, 38–39. Hostler gave MacDonald the contact information for LIFE's workman's compensation insurance company. *See id.* at 38. No one expressly threatened her employment or discouraged MacDonald from filing a claim, but according to MacDonald the owners started treating her differently after she presented her medical bills for workman's compensation. *See id.* at 36. In May, Pat Holster removed the phone from

3

MacDonald's office after MacDonald asked other employees to testify in favor of her claim; in June, Susan Hutchinson took away MacDonald's "Director of Nursing" title without explanation. *See* DE 34 at 21–22. At the time of her deposition in January 2011, MacDonald's claim was still pending. *See* DE 26-3 at 41.

At an orientation class on November 11, 2008, MacDonald administered Mantoux (tuberculosis) tests to a group of new LIFE employees. *See id.* at 22–23. According to MacDonald, the testing went smoothly, and she administered five Mantoux tests, placed the five needles in the sharps box, and went on to teach the rest of her class. *See id.* at 24–25. The next day, however, MacDonald was called into Kathy Boeslund's office, where she met with Boeslund, Susan Hutchinson, and Patricia Hostler. *See id.* at 65–66. She was told that she had reused a syringe the day before and told that if she resigned, no one would ever know about it. *See id.* at 67. According to MacDonald, the only explanation she was given at the time was that they "simply counted the syringes" and that the insurance company was forcing them to do this. *See id.* at 68. MacDonald denied reusing the syringe and refused to resign. *See id.* at 67. She was fired on the spot. *See id.* at 68–69.

LIFE tells the story differently. According to Marci Reinbolt, the new employees came to her after the orientation class and reported that "they saw MacDonald use a syringe to give the test, then recap the syringe, use the contaminated syringe to extract the test solution from a vial, and then use it to give the test to another person," and that MacDonald was informed of her error but denied it and continued to use the contaminated vial. DE 26-4 ¶ 5. Reinbolt claims that five people were cross-contaminated and had to be tested for communicable diseases for a full year. *Id.* ¶ 6. Reinbolt further states that she wrote out a statement about what she was told and requested that the eight witnesses write out statements regarding what they observed. *See id.* ¶ 7. According to one of those witnesses, Terry Layne,

4

however, the statement he signed was not true: he did not see what occurred and instead wrote what Reinbolt told him to write because LIFE was his first employer ever and he did what management told him. *See* DE 34 at 10.

In December 2008, MacDonald filed a Charge of Discrimination with the City of Fort Wayne Metro Human Relations Commission, claiming that she believed she was fired due to her age because two younger employees were hired prior to her termination and the reason given for her termination was false and pretextual. *See* DE 26-1. On October 27, 2009, the Equal Employment Opportunity Commission issued MacDonald a Notice of Suit Rights letter regarding the Charge of Discrimination. *See* DE 26-2.

## Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) *Kerri v. Bd. Of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of genuine issues of material fact." *Id.* at 323. Once the moving party meets this burden, the nonmoving party may not rest on allegations or denials in its own pleading, but must set out specific facts showing a genuine issue for trial. Fed. R. Civ.

5

P. 56(c)(1); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). The disputed facts must be *material*, which means that they "might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010 WL 1570805, at *2 (N.D. Ind., Apr. 16, 2010). A *genuine* dispute means more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## Analysis

MacDonald claims that she was terminated from her job because of her age and in retaliation for her filing of a claim for worker's compensation. The former reason would violate the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), which prohibits a employer from discriminating against an employee who is 40 years old or older on the basis of her age. *Id.* §§ 623(a), 631(a). The later reason would be unlawful under the Indiana Supreme Court's decision in *Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425, 428 (Ind. 1973), which held that although at-will employees may generally be terminated without cause, it is unlawful to fire an employee solely in retaliation for exercising certain statutorily created rights, including filing a claim under the Indiana Workman's Compensation Act. The Court will resolve the federal claim first and then, after disposing of that claim, consider whether it is appropriate to exercise its discretion to retain jurisdiction over the remaining state law claim.

A.  *Age Discrimination Claim*

MacDonald alleges that LIFE terminated her employment because of her age, in violation of the ADEA. Unlawful discrimination may be proved either through direct evidence of impermissible motive, including circumstantial evidence, or indirectly through the burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v.*

6

*Green*, 411 U.S. 792, 801–04 (1973). *See Tubergen v. St. Vincent Hospital and Health Care Ctr., Inc.*, 517 F.3d 470, 474 (7th Cir. 2008).

MacDonald's claim cannot proceed under the direct method because she has no evidence "point[ing] directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). She has no evidence that any of LIFE's owners admitted that they based their decision on her age, nor even any circumstantial evidence establishing a chain of evidence pointing to discriminatory intent, such as suspicious timing, ambiguous oral or written statements, or statistical evidence of disparate treatment. *See Darchak v. City of Chicago Bd. Of Ed.*, 580 F.3d 622, 631 (7th Cir. 2009). Based on MacDonald's own testimony, no one at LIFE ever questioned MacDonald's ability to do her job due to her age or indicated that she was getting to old for her job. *See* DE 26-3 at 15–17. The Court must view all evidence in the light most favorable to MacDonald, but there must be some evidence to view.

Without direct evidence, MacDonald must proceed under the indirect method, which requires a three step "burden-shifting" approach. The burden is first on MacDonald to establish four distinct elements of a *prima facie* case by a preponderance of the evidence (which simply means that these four elements, unless rebutted, would prove her claim): (1) that she was a member of a protected class; (2) that she was performing at a level that met her employer's legitimate expectations; (3) that she was subject to an adverse employment action; and (4) that she was treated differently than other similarly situated employees who were not members of her protected class. *McDonnell Douglas*, 411 U.S. at 802; *Tubergen*, 517 F.3d at 474. If MacDonald meets her initial burden and establishes her *prima facie* case, the burden then shifts to LIFE to articulate a legitimate, non-discriminatory reason for terminating MacDonald. *McDonnell Douglas*, 411 U.S. at 802; *Ritter v. Hill 'n Dale Farm,*

7

*Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000). Finally, the burden shifts back to MacDonald to demonstrate that the reason given was a pretext—that is, that LIFE "did not believe the reasons it gave" for its action, and not merely that it "erred or exercised poor business judgment." *Ritter*, 231 F.3d at 1044.

MacDonald's age discrimination claims fail because she cannot establish the elements of her *prima facie* case. The first and third elements of the *prima facie* case are not disputed. MacDonald was 62 years old when she was fired and thus a member of the class of persons over 40 protected by ADEA, and termination of employment is obviously an adverse employment action. LIFE argues that MacDonald cannot show the second element because she committed a serious nursing error by reusing a syringe to administer tuberculosis tests and this fell well short of LIFE's legitimate expectations for its head nurse. MacDonald disputes that this incident ever took place however, and points to evidence that she was framed by LIFE's owners for something she never did. As is not infrequently the case, the second element of the *prima* facie case is not easily separated from the question of whether an employer's stated reason for its decision was pretextual.

The Court need not decide whether the dispute regarding the second element involves genuine disputes over material facts: even assuming, that MacDonald has met the second element, her *prima facie* case fails definitively at the fourth element. To establish this element, MacDonald must have evidence that LIFE treated similarly situated individuals who were outside the protected class more favorably than her. *See Nail v. Boehringer Ingelhein Pharmaceuticals, Inc.*, 627 F.3d 596, 599–600 (7th Cir. 2010). Such evidence is necessary to create an inference that age, rather than some other reason (lawful or not) motivated the decision.

8

There are two ways MacDonald might establish that similarly situated but substantially younger employees were treated more favorably than she. First, regardless of whether LIFE honestly believed that MacDonald reused a syringe, MacDonald could establish the fourth element with evidence that other, substantially younger, nurses were not fired following similarly serious errors. *See id.* at 600. But there is no evidence in the record that any other LIFE employee has ever made a similar mistake and thus no evidence that she was treated different from substantially younger employees in this regard.

Second, assuming for the sake of argument that LIFE's stated reason for firing MacDonald was a pretext, she could also meet her burden by showing that LIFE hired (or promoted) a substantially younger employee to perform her job after she was fired. This would raise the same inference of discrimination as when an employer declines to hire a qualified individual in the protected class but continues to search for another person to hire for the same position. *See id.* at 600–01 (citing *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007)). But the record is altogether silent on who replaced MacDonald as head of the medical department, so there is no way to make the comparison. Morever, there is no evidence regarding *any* similarly situated employees, much less substantially younger employees. LIFE admits that it hired two younger nurses, without any indication as to their respective ages, before MacDonald was terminated.  According to MacDonald, one was hired two years earlier, the other a week before MacDonald was terminated.  However, new nurses are hardly similarly situated to the head of the medical department in terms of responsibilities, supervision, or experience, and there is no evidence at all regarding what duties they fulfilled.

Because she cannot establish that similarly situated but substantially younger individuals were treated more favorably than she was, MacDonald cannot establish the

9

fourth element of her *prima facie* case. Therefore, to resolve the age discrimination claim, the Court "need not proceed with the remaining steps of the *McDonnell Douglas* framework" and consider whether LIFE's stated reason for firing MacDonald was a pretext. *Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001). Her age discrimination claim fails as a matter of law, and the Court will grant summary judgment to LIFE on this claim.

B. *Supplemental Jurisdiction over Worker's Compensation Claim*

Because the Court is granting summary judgment on MacDonald's federal age discrimination action, the only remaining claim is an Indiana state law claim that she was terminated because she exercised her statutorily created right to file a worker's compensation claim. *See Frampton*, 297 N.E.2d at 428. Had this claim been the sole basis for her complaint, the case could not have been removed to federal court in the first place. Now, having resolved the claims over which this Court had original jurisdiction, the Court must decide whether to remand the remaining state claims to Allen Superior Court, pursuant to 28 U.S.C. § 1367(c)(3). See *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 619 (1988); *Bean v. Wis. Bell, Inc.*, 366 F.3d 451, 456 (7th Cir. 2004); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727-28 (7th Cir. 1998).

A district court exercises significant discretion in determining whether to retain or remand such remaining state law claims, known as "pendant" claims, based upon "the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Cohill*, 484 U.S. at 357. However, district courts do not exercise this discretion without any guidance, and the Seventh Circuit has repeatedly emphasized that, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). This presumption is subject

to three exceptions, namely when: (1) "the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "it is absolutely clear how the pendent claims can be decided." *Id.*

None of these exceptions apply in this case. First, to the extent that the applicable statutes of limitations have run on any of the Plaintiffs' state law claims, remanding these claims to state court (rather than dismissing them outright) obviates any need to file a new action potentially subject to statute of limitations concerns. Second, although the parties have engaged in discovery in this forum, these efforts need not be duplicated because the record survives remand. Third, the Court cannot say that "it is absolutely clear" how the *Frampton* claim can be decided. Because the federal age discrimination claim failed to establish a *prima facie* case due to the lack of similarly situated but younger employees, it was unnecessary to reach the issue of whether LIFE's purported lawful reason for its decision was a pretext. Under Indiana retaliatory discharge law, however, it appears that MacDonald may survive summary judgment by presenting evidence that supplies an "inference of causation between the filing of a claim and the termination, such as proximity in time *or evidence that LIFE's asserted lawful reason for discharge is a pretext*." *Powdertech, Inc. v. Joganic,* 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002) (emphasis added). The Court does not find the question of pretext as cut and dry as LIFE would have it, particularly in light of Terry Layne's statement in his sworn affidavit that not only was what he wrote not true, but that he wrote the untrue statement at Reinbolt's direction. Because the remaining claim turns on a difficult question and, if that question is resolved against LIFE, may ultimately necessitate a trial, this Court finds it appropriate to permit the state court to

interpret and apply its own law to resolve a suit between two Indiana citizens. As a result, the factors of economy, convenience, fairness, and comity here counsel in favor of remanding the Plaintiffs' state law claims to state court.

### Conclusion

For the foregoing reasons, the Court **GRANTS** LIFE's Motion for Summary Judgment [DE 25] relative to MacDonald's claim for unlawful age discrimination in violation of the ADEA and **REMANDS** the remaining state law claim to Allen Superior Court for adjudication. The Court **ORDERS** the Clerk to redact any individually identifiable protected health information in DE34 before transmitting the record to Allen Superior Court. SO ORDERED.

ENTERED:    March 30, 2012

        /s/ JON E. DEGUILIO
Judge
United States District Court